NAUHMarP

```
 1   UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
 2   ------------------------------x

 3   UNITED STATES OF AMERICA,

 4              v.                          22 Cr. 91 (RA)

 5   JOSEFINA MARINE,

 6                                          Plea
                   Defendant.
 7
     ------------------------------x
 8
                                          New York, N.Y.
 9                                        October 30, 2023
                                          10:10 a.m.
10

11   Before:

12                    HON. RONNIE ABRAMS,

13                                          District Judge

14                         APPEARANCES

15   DAMIAN WILLIAMS
          United States Attorney for the
16        Southern District of New York
     BY:  MICAH FERGENSON
17        MICHAEL HERMAN
          Assistant United States Attorneys
18
     JOHN L. RUSSO
19        Attorney for Defendant

20   Also Present:

21   Humberto Garcia, Interpreter (Spanish)

22

23

24

25
```

NAUHMarP

1          (Case called)

2          MR. HERMAN:  Good morning, your Honor.  Michael Herman

3     and Micah Fergenson for the government, joined by our legal

4     intern, Wesley Schmidt.

5          THE COURT:  Good morning, all.

6          MR. RUSSO:  And for Josefina Marine, John Russo.  Good

7     morning, your Honor.

8          THE COURT:  Good morning.  I understand, Mr. Russo,

9     that you have a bail argument, but I think that's properly

10    brought after she pleads guilty.  I mean, if she doesn't want

11    to plead guilty, I'm happy to schedule a trial today, and we'll

12    proceed then.  I need to apply the proper legal standard, and

13    if she intends to plead guilty today, we all know what standard

14    applies.

15         MR. RUSSO:  Well, Judge, Ms. Marine has already signed

16    the plea agreement, as have I.  So it's not a question of

17    whether or not she does intend to plead guilty.  That is her

18    intention.  She's signed an agreement.

19         THE COURT:  OK.

20         MR. RUSSO:  What is uncertain —— and it's not just in

21    this particular case, it's in many cases here in the Southern

22    District —— what is uncertain is whether or not this year's

23    policy from the government is different from it was last year

24    and the year before that, and that is ——

25         THE COURT:  Policy with respect to 3143(a)(2)?

NAUHMarP

1          MR. RUSSO:  Correct, your Honor.  I've had cases as

2     recently as a month ago where staying home and taking care of

3     your parents was an exceptional circumstance in which a

4     district court, an Article III judge in this district, let the

5     client out pending sentencing.  That is the concern, and that

6     is something that I would like to be able to tell the client so

7     that she knows when she steps into court and she's prepared to

8     plead guilty what exactly is going to happen.

9          And given the flux — again, I don't hold the Court or

10     the government, quite frankly, responsible.  They're enacting

11     policy.  This is a little bit of a bizarre law, quite frankly.

12     I mean, you could be firing a gun in the streets as a convicted

13     felon and still be out pending sentencing, and I can give the

14     examples I'm sure that the Court is aware of.

15          So, Judge, I simply wanted to give Ms. Marine some

16     indication as to whether or not she's prepared with a two- or

17     three-month supply of her cancer medicine, for example, her

18     blood pressure.

19          THE COURT:  You knew she was pleading guilty today.

20     She knew she was pleading guilty today.  If you wanted to make

21     this argument, you could have advised her.  She's fully aware

22     of the proof that came out in the trial against Mr. Ortega.

23     I'm not sure what the surprise is here.  I'm happy to advise

24     her now on what the legal standard is.  If you want to take a

25     break and consult with her, you're free to do so.

NAUHMarP

1      So I'm not sure I understand why we would do this

2  before.  If she wants to plead guilty, she should plead guilty.

3  I'm happy to advise her as to what the standard is today.  I'm

4  happy to do that now.  As I said, I'm happy to take a break.

5  But I'm not sure why we would do this before she pleads guilty.

6  I mean, we have a trial, I think, scheduled for tomorrow, and

7  we're supposed to go to trial tomorrow.  Realistically, that's

8  not going to happen, but I'm happy to schedule a very prompt

9  trial for another day if she does not want to plead guilty, and

10  I'm also happy to advise her as to what the bail standard is

11  once she either pleads guilty or is convicted and then give you

12  the time to talk to her.

13      MR. RUSSO:  Well, Judge, again, we've already signed

14  the plea agreement.

15      THE COURT:  I understand.

16      MR. RUSSO:  No question that she intends to plead

17  guilty.  The offer that we have negotiated and agreed to with

18  the government is — has gone through some changes and it's

19  acceptable, and Ms. Marine has agreed to plead guilty to it.

20  It is the uncertainty of which — again, this Court's

21  articulation of what the standards are on the presumption

22  statute, I assure you, your Honor, are different than half a

23  dozen of your colleagues in this district and certainly

24  different than numerous others.  So —

25      THE COURT:  I don't think the law is any different in

1   my courtroom or anyone else's.  I understand that what any

2   particular judge in any particular case deems to be exceptional

3   circumstances may differ, and I fully intend to hear you out on

4   what is exceptional here.  But I don't think it's true that the

5   law is any different in my courtroom than anyone else's.

6          MR. RUSSO:  No, Judge, you corrected me absolutely,

7   Judge, that the law is the same, and I'll leave discussions

8   about the efficacy of that for another day.  But, yes, it is

9   different depending on what Court there is.

10          So, yes, Ms. Marine has agreed.  We have a signed plea

11   agreement.  I've executed it.  It's been ——

12          THE COURT:  All right.  If she intends to plead guilty

13   today, why don't we proceed with that first, and then we can

14   talk about bail.

15          All right.  So first I want to note that I understand

16   that Ms. Marine's being assisted by a Spanish interpreter.  If

17   at any time you're having trouble understanding anything that's

18   happening in this proceeding, either because of the language

19   barrier or for any other reason, please let me know.

20          Ms. Marine, I understand that you intend to plead

21   guilty to the lesser included offense of Count One of the

22   superseding indictment.  Is that correct?

23          THE DEFENDANT:  Correct.

24          THE COURT:  Before deciding whether to accept your

25   plea, I'm going to ask you certain questions so that I can be

1  sure that you understand your rights and that you're pleading

2  guilty voluntarily and because you are guilty and not for some

3  other reason.  So it's important that you answer my questions

4  honestly and completely.  If at any point you don't understand

5  a question or would like to consult with your attorney, just

6  let me know.

7          Ms. Cavale, could you please place Ms. Marine under

8  oath.

9          THE DEPUTY CLERK:  Ms. Marine, please rise, stand up

10  and raise your right hand.

11          (Defendant sworn)

12          THE DEPUTY CLERK:  Thank you.  You may be seated.

13          THE COURT:  You should understand, Ms. Marine, that

14  you're now under oath.  So if you answer any of my questions

15  falsely, you could be charged with a separate crime of perjury.

16          I'm going to start by asking questions to ensure that

17  you're competent to plead guilty.  These are questions that I

18  ask of everyone in your position.

19          How old are you?

20          THE DEFENDANT:  59 years old.

21          THE COURT:  How far did you go in school?

22          THE DEFENDANT:  Eleventh.

23          THE COURT:  Are you currently or have you recently

24  been under the care of a medical professional, psychiatrist, or

25  mental health-care provider?

NAUHMarP

1          THE DEFENDANT:  I have had cancer surgery, and I am

2     under treatment every six months.

3          THE COURT:  Have you ever been hospitalized for mental

4     illness, alcoholism, or drug addiction?

5          THE DEFENDANT:  No.

6          THE INTERPRETER:  Interpreter correction.

7          THE DEFENDANT:  I have to take medication daily.

8          THE COURT:  Have you ever been hospitalized for mental

9     illness, alcoholism, or drug addiction?

10          THE DEFENDANT:  No.

11          THE COURT:  In the past 24 hours, have you taken any

12     drugs, medicine, or pills or drunk any alcoholic beverages?

13          THE DEFENDANT:  No.

14          THE COURT:  Is your mind clear today?

15          THE DEFENDANT:  Yes.

16          THE COURT:  Do you understand what's happening in

17     these proceedings?

18          THE DEFENDANT:  Yes.

19          THE COURT:  Does either counsel have any doubt as to

20     Ms. Marine's competence to plead guilty at this time?

21          MR. HERMAN:  Not from the government.

22          MR. RUSSO:  No, Judge, because I don't believe that

23     the medication she takes daily affects her ability.

24          THE COURT:  All right.  Thank you.

25          On the basis of Ms. Marine's responses to my questions

1   and my observations of her demeanor here in court and

2   representations of counsel, I find that she is fully competent

3   to enter an informed plea of guilty at this time.

4           Have you had enough opportunity to discuss your case

5   with your attorney?

6           THE DEFENDANT:  Yes.

7           THE COURT:  Have you discussed with your attorney the

8   nature of the charge to which you intend to plead guilty and

9   any possible defenses you may have to that charge?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Have you also discussed with your attorney

12  the rights that you'll be giving up by pleading guilty?

13          THE DEFENDANT:  I didn't hear well.

14          THE COURT:  Have you also discussed with your attorney

15  the rights that you'll be giving up by pleading guilty and the

16  consequences of pleading guilty?

17          THE DEFENDANT:  No.

18          THE COURT:  OK.  Mr. Russo, have you discussed with

19  your client the rights that she'll be giving up and the

20  consequences of pleading guilty?  I mean, I'll go through them

21  with her now.

22          MR. RUSSO:  I have, Judge.

23          THE COURT:  Is there anything else you want to advise

24  her about now?  Do you want to take a minute and discuss that

25  with her, and then I'll go over it as well?

NAUHMarP

1          MR. RUSSO:  If you could, Judge, give me a moment, I

2     will remind her of the post-plea procedures that we'll go

3     through.

4          THE COURT:  Why don't you take a minute.  Thank you.

5          (Counsel conferred with defendant)

6          MR. RUSSO:  Thank you, Judge.

7          THE COURT:  Are you satisfied with your attorney's

8     representation of you, Ms. Marine?

9          THE DEFENDANT:  Yes.

10          THE COURT:  All right.  Now I'm going to explain

11     certain constitutional rights that you have.  These are rights

12     that you'll be giving up if you enter a guilty plea.

13          So, first, under the Constitution and laws of the

14     United States, you have a right to plead not guilty to the

15     charge in the superseding indictment.

16          Do you understand that?

17          THE DEFENDANT:  Yes.

18          THE COURT:  If you did plead not guilty, you'd be

19     entitled under the Constitution to a speedy and public trial by

20     jury of those charges.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  In advance of trial, if you chose to go to

24     trial, you would have the opportunity to seek suppression of

25     any or all of the evidence against you on the basis it was

1   obtained in violation of the Constitution.

2           Do you understand that?

3           THE DEFENDANT:  Yes.

4           THE COURT:  At trial, again, if you chose to go to

5   trial, you would be presumed innocent.  That means that you

6   would not have to prove that you were innocent.  Instead, the

7   government would need to prove your guilt beyond a reasonable

8   doubt before you could be found guilty.  So even if you did

9   nothing or said nothing at trial, you could not be convicted

10  unless a jury of 12 people agreed unanimously that you are

11  guilty.

12          Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  During trial, if you chose to go to trial,

15  the witnesses for the prosecution would have to come to court

16  and testify in your presence where you could see them and hear

17  them and your lawyer could cross-examine them.  If you wanted

18  to, your lawyer could offer evidence on your behalf.  You'd be

19  able to use the Court's power to compel witnesses to come to

20  court and testify truthfully in your defense even if they

21  didn't want to come.

22          Do you understand that?

23          THE DEFENDANT:  Yes.

24          THE COURT:  At trial, again, if you chose to go to

25  trial, you'd have the right to testify if you wanted to, but

1  you'd also have the right not to testify.  And if you chose not

2  to testify, that could not be used against you in any way.  No

3  inference or suggestion of guilt could be made from the fact

4  that you chose not to testify.

5          Do you understand that?

6          THE DEFENDANT:  Yes.

7          THE COURT:  At trial and at every stage of your case,

8  you'd be entitled to be represented by an attorney, and if you

9  could not afford an attorney, one would be appointed at public

10  expense, meaning free of cost, to represent you.

11          Do you understand that?

12          THE DEFENDANT:  Yes.

13          THE COURT:  If you were convicted at trial, you would

14  have the right to appeal that verdict to a higher court.  As I

15  said before, you have the right to plead not guilty.  Even as

16  you sit here right now for purposes of entering a plea of

17  guilty, you have the right to change your mind and to go to

18  trial, but if you do plead guilty and I accept your plea, there

19  will be no trial, and you'll be giving up the rights I just

20  described.

21          Do you understand that?

22          THE DEFENDANT:  Yes.

23          THE COURT:  If you plead guilty, all that will remain

24  to be done is for me, for the Court, to impose sentence.  I'll

25  enter a judgment of guilty and sentence you on that basis,

1   after considering whatever submissions I get from you, your

2   lawyer, and the government, as well as a presentence report

3   prepared by the probation department.  But there will be no

4   appeal with respect to whether the government could use the

5   evidence it has against you or with respect to whether you did

6   or did not commit the crime.

7         Do you understand that?

8         THE DEFENDANT:  Yes.

9         THE COURT:  If you plead guilty, do you understand

10   that you'll also be giving up your right not to incriminate

11   yourself, since I'm going to ask you certain questions here in

12   court today in order to satisfy myself that you are in fact

13   guilty as charged.

14         Do you understand that?

15         THE DEFENDANT:  Yes.

16         THE COURT:  All right.  So I understand you intend to

17   plead guilty to the lesser included offense of Count One of the

18   superseding indictment.

19         I'm going to ask the government to state the elements

20   of the offense in question, please.

21         MR. HERMAN:  Yes, your Honor.  The lesser included

22   offense is a narcotics conspiracy in violation of Title 21,

23   United States Code, Sections 846 and 841(b)(1)(C).  The three

24   elements are, first, an agreement or understanding existed

25   between two or more persons to violate the narcotics laws of

NAUHMarP

1  the United States; second, the defendant knowingly became a

2  member of that conspiracy; and, third, the conspiracy involved

3  the possession with intent to distribute or the distribution of

4  mixtures and substances containing a detectable amount of

5  narcotics, which were, in fact, cocaine and fentanyl.  The

6  government would also be required to prove venue by a

7  preponderance of the evidence.

8          THE COURT:  Thank you.

9          So, Ms. Marine, do you understand that if you were to

10  go to trial, the government would need to prove each of those

11  elements to a jury before you could be convicted?  Do you

12  understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Now I'm going to discuss the maximum

15  penalties for this crime.  The maximum means the most that

16  could possibly be imposed.  It doesn't necessarily mean it's

17  the sentence you will receive, but you have to understand that

18  by pleading guilty you are exposing yourself to the possibility

19  of receiving any combination of punishments up to the maximums

20  I'm about to describe.

21          So with respect to your liberty, the maximum term of

22  imprisonment for this crime is 20 years in prison.

23          Do you understand that?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Any term of imprisonment you do receive

NAUHMarP

1    may be followed by a term of supervised release of up to three

2    years.  Supervised release means that if you're sentenced to

3    prison, you will be subject to the supervision of the probation

4    department upon release.  You'll be required to obey certain

5    rules, and if you violate those rules, you can be returned to

6    prison without a jury trial to serve additional time even

7    beyond your original sentence.

8              Do you understand that?

9              THE DEFENDANT:  Yes.

10             THE COURT:  You should also understand that there's no

11   parole in the federal system.  So if you're sentenced to

12   prison, you will not be released early on parole, although

13   there's a limited opportunity to earn credit for good behavior.

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  In addition to these restrictions on your

17   liberty, the punishment for this crime includes certain

18   financial penalties.  The maximum allowable fine is $1 million,

19   twice the gross pecuniary gain derived from the offense, or

20   twice the gross pecuniary loss to a person other than yourself

21   as a result of the offense.

22             Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  I'm also required to impose a mandatory

25   special assessment, or fee, of $100.  In addition, I must order

1  restitution to any persons or entities injured as a result of

2  your criminal conduct, and I can order you to forfeit all

3  property derived from the offense or used to facilitate the

4  offense.

5              Do you understand that?

6              THE DEFENDANT:  Yes.

7              THE COURT:  Do you understand that these are the

8  maximum penalties for the lesser included offense of Count One

9  of the superseding information —— indictment?

10             THE DEFENDANT:  Yes.

11             THE COURT:  All right.  Now, you should be aware that

12 the punishments I've just described are those that may be part

13 of a sentence, but being convicted of a felony may have other

14 consequences.

15             Are you a United States citizen?

16             THE DEFENDANT:  Yes.

17             THE COURT:  Then you should understand that as a

18 result of your guilty plea, you may lose certain valuable civil

19 rights, to the extent that you have them now, like the right to

20 vote, the right to hold public office, the right to serve on a

21 jury, and the right to possess any kind of firearm.

22             Do you understand that?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Now, in imposing sentence, federal judges

25 are required to consider the recommendations of the federal

1    sentencing guidelines.  The guidelines are a complicated set of

2    rules for determining an appropriate sentence.  Although judges

3    must take into account the sentencing guidelines when

4    determining a sentence, they're only advisory.  And so in the

5    end, the judge is required to give the sentence that she

6    believes best satisfies the purposes of the criminal law,

7    consistent with factors that are set forth in a provision of

8    the law, and that provision of the law is 18 United States

9    Code, Section 3553(a).

10          Have you discussed the sentencing guidelines with your

11   attorney?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Do you understand that the guidelines are

14   only recommendations to the Court?

15          THE DEFENDANT:  Yes.

16          THE COURT:  All right.  Now, I understand that you

17   entered into a written plea agreement with the government.  Is

18   that correct?

19          THE DEFENDANT:  Correct.

20          THE COURT:  I have a September 18, 2023, agreement.

21   It appears to be the original.  I've marked it as Court

22   Exhibit 1, but I want to confirm that with you.  It's addressed

23   to your attorney and signed by Assistant United States

24   Attorneys Fergenson and Herman.

25          Is that your signature on the last page?

NAUHMarP

1          THE DEFENDANT:  Yes.

2          THE COURT:  Before you signed this agreement, did you

3    read it?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Was it translated for you?

6          THE DEFENDANT:  Yes, it was translated for me.

7          THE COURT:  Did you discuss it with your attorney?

8          THE DEFENDANT:  Yes.

9          THE COURT:  I realize that it's a somewhat lengthy

10   document.  It contains some technical legal language, but after

11   reviewing it and discussing it with your attorney, do you

12   understand all of the terms of the agreement?

13         THE DEFENDANT:  Yes.

14         THE COURT:  All right.  I'm going to ask the

15   government to summarize the primary terms of the agreement,

16   please.

17         MR. HERMAN:  Yes, your Honor.  This is a plea to the

18   lesser included offense that your Honor just outlined a few

19   minutes ago.  The salient features include the parties'

20   agreement not to collaterally attack or otherwise challenge

21   this Court's determination as to the base offense level for

22   Count One, which is the primary area of dispute between the

23   parties.  It is the government's position that the base offense

24   level is 38 because the defendant was involved in the

25   distribution of a controlled substance that resulted in the

NAUHMarP

1    deaths of the three victims, and it is the defense position

2    that that guideline does not apply.  So the Court is going to

3    have to make that determination at sentencing.  The parties

4    agreed to abide by whatever determination the Court makes and

5    not to appeal or collaterally challenge that.  As a result ——

6            THE COURT:  Can I stop you there.

7            Do you know yet, and if you don't that's fine, if

8    either side will be requesting a *Fatico* hearing or relying on

9    the testimony from the Ortega trial?

10           MR. HERMAN:  Your Honor, the government will be

11   relying on the testimony from the Ortega trial which the Court

12   is permitted to rely on under Second Circuit case law.  We're

13   happy to provide the case law to the Court, but the Court is ——

14           THE COURT:  Understood.  All right.  Please proceed.

15   Thank you.

16           MR. HERMAN:  And so the base —— the parties agree that

17   the guidelines range is either, under the government's view,

18   262 to 327 months, which essentially is a statutory maximum of

19   240 months or, in the defense view, 108 to 135 months.  And as

20   the Court indicated earlier, there is a statutory maximum of

21   240 months.  And so those are the main —— the main features of

22   the guidelines range.

23           There's also an appellate waiver, both as to the

24   Court's determination of the base offense level and also as to

25   any sentence that is within or below the stipulated guidelines

NAUHMarP

1    range.  So, essentially, any sentence below the statutory

2    maximum of 240 months.

3              THE COURT:  Ms. Marine, is all that consistent with

4    your understanding of the agreement?

5              MR. RUSSO:  Judge, if I may address that.  One is that

6    the government may rely on the record in another trial, but

7    that record does not —— and we have expressed this to the

8    government repeatedly —— in our view, accurately reflect

9    Ms. Marine's involvement or presence in this conspiracy.

10             THE COURT:  So you might be requesting a *Fatico*

11   hearing?

12             MR. RUSSO:  Or, Judge, just putting forth a record for

13   the Court to consider that there was a lengthy period of time

14   between 2018 and 2022 where Ms. Marine was either in the

15   hospital having cancer surgery, at home recovering from cancer.

16   There was a period of time in the pandemic —— and we can do all

17   this in the conduct of sentencing.

18             THE COURT:  Yes, I didn't mean to get ahead of

19   ourselves.

20             MR. RUSSO:  That is what I did explain to Ms. Marine.

21   Whether we'll have a *Fatico* hearing or not remains to be seen.

22             THE COURT:  OK.  Now let's just focus on the plea

23   agreement.

24             MR. RUSSO:  Yes.

25             THE COURT:  Ms. Marine, is what AUSA Herman said

1    consistent with your understanding of the plea agreement that

2    you have signed?

3            THE DEFENDANT:  Yes.

4            THE COURT:  So because you're taking one position as

5    to the guidelines calculation and the government's taking

6    another, the stipulated guidelines range encompasses both of

7    those ranges because I'm going to make that determination at

8    sentencing.  So the stipulated guidelines range you've agreed

9    to is 108 months to 240 months.  That means that — but

10    nonetheless, you can still seek a sentence, I'll just say this,

11    outside of that range.

12            But I want to make sure that you understand that under

13    this agreement you're giving up your right to appeal or

14    otherwise challenge your sentence so long as I sentence you to

15    240 months of imprisonment or less.  So if I sentence you to

16    more than the 240 months, you have a right to appeal or

17    otherwise challenge your sentence, but if I sentence you to 240

18    months or less, you can't appeal or challenge that sentence

19    under this agreement.

20            Do you understand that?

21            MR. RUSSO:  Judge, the way that I did explain it to

22    Ms. Marine is that the Court will determine, after we go

23    through whatever *Fatico*-type exercise there might be, whether

24    or not the range will be 135 or whether the range will be 262

25    to 327.

NAUHMarP

1          THE COURT:  I understand that, but with respect to the

2     appellate waiver on page 5, it reads:  It is agreed that the

3     defendant will not file a direct appeal nor bring a collateral

4     challenge, including but not limited to an application under

5     Title 28, United States Code, Section 2255 or Section 2241 of

6     any sentence within or below the stipulated guidelines range of

7     108 to 240 months' imprisonment.

8          MR. RUSSO:  She understands that, Judge.

9          THE COURT:  OK.

10         MR. RUSSO:  I also would just confirm for her that the

11    minimum sentence is zero, in terms of incarceration.

12         THE COURT:  Yes.  And as I noted, she can seek a

13    sentence outside of the guidelines range, but the stipulated

14    range, which includes both guidelines —— the guidelines you are

15    advocating for and the one the government's is advocating for

16    —— is 108 to 240 months, and she won't be able to appeal a

17    sentence of 240 months or less.

18         MR. RUSSO:  That we understand, your Honor.

19         THE COURT:  OK.  Ms. Marine, did you willingly sign

20    this plea agreement?

21         THE DEFENDANT:  Yes.

22         THE COURT:  Has anyone threatened, bribed, or forced

23    you to sign the plea agreement or to plead guilty?

24         THE DEFENDANT:  No.

25         THE COURT:  Other than what's in the plea agreement,

NAUHMarP

1    has anyone offered you any inducement to plead guilty?

2              THE DEFENDANT:  No.

3              THE COURT:  Has anyone made any promise as to what

4    your sentence will be?

5              THE DEFENDANT:  No.

6              THE COURT:  I just want to make sure you understand

7    that if anyone attempted to predict what your sentence will be,

8    that that prediction could be wrong.  And I say that because no

9    one ─ not your lawyer, not the government, not even I ─ know

10   today what your sentence will be.  That won't be determined

11   until I receive a presentence report, I receive the submissions

12   from your lawyer and the government, I do my own independent

13   calculation under the sentencing guidelines, and then determine

14   whether there's a basis for not following the guidelines.

15             So I just want to make sure you understand that even

16   if your sentence is different from what someone may have

17   predicted or what you might have hoped for, once you plead

18   guilty, you won't be allowed to withdraw your plea.

19             Do you understand that?

20             THE DEFENDANT:  Yes.

21             THE COURT:  All right.  Now that you've been advised

22   of the charge against you and the possible penalties you face

23   and the rights you're giving up, is it still your intention to

24   plead guilty?

25             THE DEFENDANT:  Yes.

NAUHMarP

1          THE COURT:  All right.  Now I'm going to ask you the

2     official question with respect to the lesser included offense

3     of Count One of the superseding indictment.  How do you plead?

4          (Counsel conferred with defendant)

5          THE DEFENDANT:  Guilty.

6          THE COURT:  Do you admit to the forfeiture allegation

7     in the indictment?

8          THE DEFENDANT:  Yes.

9          THE COURT:  Now tell me in your own words what you did

10    that makes you believe that you're guilty of this crime.

11         (Counsel conferred with defendant)

12         MR. RUSSO:  Actually, can we ask the translator?

13         (Counsel conferred with defendant)

14         THE COURT:  Whenever you're ready.

15         THE DEFENDANT:  During some parts of 2018 until 2022,

16    I participated in a conspiracy to distribute narcotics here in

17    Manhattan.

18         THE COURT:  When you did that, did you know that what

19    you were doing was wrong and was illegal?

20         THE DEFENDANT:  I didn't know what I was doing.

21         THE COURT:  I'm not sure what that means.  Can you

22    elaborate on that, please.

23         (Counsel conferred with defendant)

24         THE DEFENDANT:  I should have known what I was doing,

25    but I didn't understand.

1    THE COURT:  Did you know that it was illegal to sell

2  cocaine and fentanyl?

3    THE DEFENDANT:  No.

4    (Counsel conferred with defendant)

5    MR. HERMAN:  Your Honor, it sounds like --

6    THE DEFENDANT:  I now know that it's illegal.

7    THE COURT:  Did you know that as part of this

8  conspiracy, your coconspirators were indeed selling cocaine and

9  fentanyl?

10    (Counsel conferred with defendant)

11    THE DEFENDANT:  No.

12    MR. RUSSO:  Can I have the interpreter, please?

13    Excuse me one moment.

14    (Counsel conferred with defendant)

15    MR. HERMAN:  Your Honor, from the government's

16  perspective, I think the key question is did the defendant

17  knowingly agree with at least one other person to sell

18  narcotics.  She doesn't have to know what those drugs were in

19  fact.

20    THE COURT:  No, you're right about that.

21    THE INTERPRETER:  Your Honor, the interpreter missed

22  the last part of the —— hearing the exchange between AUSA.

23    THE COURT:  I'm sorry.  Thank you.

24    Mr. Herman, could you repeat that, please.  And you're

25  correct about that.

1          MR. HERMAN:  Yes, your Honor.  The government's view

2    is the key question for the defendant is during the time period

3    of the conspiracy, did she agree with at least one other person

4    to distribute narcotics?  She doesn't have to know they were,

5    in fact, cocaine or fentanyl, although the government would be

6    required to prove that they were, in fact, those drugs.

7          THE COURT:  All right.  Ms. Marine, during the time

8    period you mentioned, did you agree with at least one other

9    person to sell narcotics?

10          (Counsel conferred with defendant)

11          MR. RUSSO:  Judge, I think it would be appropriate and

12    accurate to say, and I think Ms. Marine is prepared to say,

13    that she participated in the distribution of narcotics, but she

14    didn't sell to anybody directly.  She certainly — and she

15    certainly cannot say that she was aware as to what kind of

16    drugs were —

17          THE COURT:  So put aside what kind of drugs it was.

18    She's pleading guilty to a conspiracy, so the question is did

19    she have an agreement with at least one other person to sell

20    narcotics?

21          MR. RUSSO:  I think that you can be part of the

22    conspiracy without agreeing to sell narcotics.  Certainly

23    distribution —

24          THE COURT:  Agree to distribute.

25          MR. RUSSO:  I think that would go over better with

NAUHMarP

Ms. Marine, Judge.  I think she'll understand that better.

THE COURT:  So, Ms. Marine, did you agree with at least one other person to distribute narcotics?

THE DEFENDANT:  Yes.

THE COURT:  Are there any questions the government wants me to ask?

MR. HERMAN:  Your Honor, I think on this record the government is satisfied with respect to whether the defendant knew it was illegal to sell — or agreed with others to distribute drugs.  That's not an element of the crime, and so with respect to the answer to that she just gave to your Honor's question, we think that satisfies the elements.

THE COURT:  All right.  Could you please summarize what the government's evidence would be if you were to go to trial against Ms. Marine.

MR. HERMAN:  Yes, your Honor.  The evidence would include, among other things, voluminous electronic evidence, including communications concerning the narcotics delivery conspiracy and the defendant's role in providing drugs to the delivery service's runners and collecting and storing the narcotics proceeds in safes in her apartment on behalf primarily of the leader of the conspiracy, her son, Billy Ortega.

There would be records related to the defendant's residence at a NYCHA apartment in Manhattan showing a tenancy

1    of herself; her son Billy Ortega who didn't, in fact, live

2    there but he was a tenant; Kaylen Rainey, who worked for the

3    conspiracy; and other coconspirators who worked for the

4    conspiracy.

5              There would be narcotics evidence, including cocaine

6    and fentanyl, that was recovered from three of the victims in

7    this case at their residences or hotel in Manhattan after being

8    delivered by the conspiracy.

9              There would be law enforcement testimony of the search

10   of the defendant's residence after she was arrested.

11             There would be testimony of Kaylen Rainey as to the

12   defendant's role in the conspiracy.

13             THE COURT:  All right.  Mr. Russo, do you agree that

14   there's a sufficient factual predicate for the guilty plea?

15             MR. RUSSO:  Yes, as charged, Judge.

16             THE COURT:  OK.  Go ahead.

17             MR. RUSSO:  I don't want to belabor it.  We, of

18   course, are reserving on whether we agree to some of the

19   enhancements and, of course, as to the exact nature of

20   Ms. Marine's participation.

21             THE COURT:  Understood.

22             Ms. Marine, because you've acknowledged that you are,

23   in fact, guilty as charged in the superseding indictment;

24   because I'm satisfied that you understand your rights,

25   including your right to go to trial, and that you're aware of

NAUHMarP

1   the consequences of your plea, including the sentence which may

2   be imposed; and because I find that you are knowingly and

3   voluntarily pleading guilty, I accept your guilty plea to the

4   lesser included offense of Count One of the superseding

5   indictment.  The probation department will want to interview

6   you in connection with a presentence report it will prepare.

7          Mr. Russo, would you like to be present for that

8   interview?

9          MR. RUSSO:  I would, Judge.

10          THE COURT:  Very well.  If you choose to speak to the

11  probation department, Ms. Marine, just make sure everything you

12  say is truthful and accurate.  I'll read the presentence report

13  very carefully.  It will be important to me in deciding what

14  sentence to impose.  Please read it carefully, and if there are

15  any errors in it, raise it with your lawyer so he can raise it

16  with me.

17          Why don't we set a sentencing date.

18          THE DEPUTY CLERK:  February 16 at 2 o'clock.

19          THE COURT:  February 16 at 2 o'clock.  I already

20  raised the question of if we're going to need a *Fatico* hearing.

21  I understand we don't need to address that today, but,

22  Mr. Russo, I do want advance notice if there is any kind of

23  hearing that you think is necessary.  OK?

24          MR. RUSSO:  Judge, I think, based on the extent of

25  conversations that I've had with both Mr. Herman and

1    Mr. Fergenson, that we may be able to avoid that.

2            THE COURT:  Understood.  The government shall provide

3    the probation office with its factual statement within one

4    week, and defense counsel shall arrange for the defendant to be

5    interviewed by the probation department within the next two

6    weeks.  Consistent with my individual rules and practices in

7    criminal cases, which are on the court website, defense

8    submissions are due two weeks prior to sentencing and the

9    government's submission, one week prior to sentencing.

10           Does the government have an application with respect

11   to bail?

12           MR. HERMAN:  Yes, your Honor.  The government believes

13   detention is mandatory after the Court has accepted the guilty

14   plea pursuant to 18 United States Code, Section 3143(a)(2).

15   Without hearing in full the defense's application, we just

16   simply don't believe that the 3145(c) factor or standard of

17   exceptional reasons is met here.

18           Our initial understanding is the basis for such a

19   motion by the defense is that —— is based on health

20   considerations.  It's the government's understanding that the

21   defendant takes a daily oral medication as sort of maintenance

22   medication for a prior breast cancer surgery and treatment that

23   occurred a number of years ago.  We have inquired of the BOP

24   and were informed that that medication can be prescribed by the

25   BOP.  And so given that fact, we don't think exceptional

1   circumstances has been met, and so the standard requires

2   detention in this case.

3           THE COURT:  All right.  Thank you.

4           Mr. Russo, would you like to be heard?

5           MR. RUSSO:  Judge, thank you.

6           Judge, as we alluded to earlier and as the government

7   is well aware, Ms. Marine is a cancer survivor who is currently

8   still being treated for and against the recurrence of her

9   breast cancer which did spread, which was not limited just to

10  the breast tissue which was removed through a mastectomy.  She

11  also has — so she does take daily medication for that.

12          She probably, according to our view of the federal

13  Bureau of Prisons clinical guidance publication from May 2019

14  be best suited and best designated to a medical care Level 3

15  facility of which for women there are fewer than a handful in

16  the United States, and the MDC in Brooklyn is not one.

17          THE COURT:  Is Bedford one?

18          MR. RUSSO:  Huh?

19          THE COURT:  Is the Bedford facility one?

20          MR. RUSSO:  I don't — I think Bedford is a state

21  facility, so I don't know that it's a federal facility, Judge,

22  and I can't speak to that.  There is one — the one for the

23  eastern region is in Kentucky.  There's also one — I had a

24  client, in fact, who had cancer — in West Virginia.  A female

25  facility in West Virginia is one.  I believe that they could —

NAUHMarP

1    she doesn't need a Level 2 or Level 1 care.  She's not at end

2    stage.

3            THE COURT:  Right now she's taking a daily pill?

4            MR. RUSSO:  She's taking a daily pill which has a

5    four-and-a-half to five-and-a-half year efficacy rate to

6    prevent the recurrence of cancer.  It's a hormonal replacement,

7    steroidal.  I'm not exactly sure.  I have her medical records

8    here, and I do have a copy of that prescription.

9            She also takes, Judge, a very strong dose to control

10   her blood pressure, which is not always well controlled.

11   Indeed, your Honor may recall last month Ms. Marine was

12   physically incapable of attending her own son's sentencing

13   because her blood pressure was not being controlled, and she

14   needed to seek urgent medical care because the medication she

15   takes was not controlling it.

16           She also, as a result of the chemotherapy and

17   everything else, has osteoporosis, which has not prevented her

18   from still working.  She's working as a cleaning woman for many

19   years, decade, indeed.  But she needs treatment for that every

20   six months.  She has scheduled appointments.

21           Judge, we're not saying that Ms. Marine should assume

22   that she will not face a period of incarceration.  It just the

23   circumstances now, I would strongly and respectfully urge,

24   would counsel that she could remain on the very strict pretrial

25   supervision that she's on, be permitted to work, come to court,

doctors, and legal, of course, and she'll be back here for

sentencing in February, well prepared to have her medication,

well prepared that she's going to be in a facility that will

take care of her.

I understand the government's job is prosecution and

punishment, and that's fine. I don't begrudge them that. But

to suggest that the MDC is capable these days when there are

half a dozen judges that I know of here in this district that

would give you a one-for-two credit for time served in the MDC,

it is not a very good place. They're having a great deal of

trouble in caring for healthy inmates. I have no confidence

whatsoever that they will give her her medication, that they

will treat her, and I just don't want Ms. Marine to have any

episodes presentence because she's in a facility that's not

treating her cancer recovery correctly, her blood pressure not

being controlled correctly, and otherwise not attending to her

health.

There are several federal facilities, and that's where

she will be designated, I'm sure, Judge, if the sentence of

this Court is imprisonment. There are medical care Level 3

facilities which treat people for cancer in remission. That's

what they're for. And she would be perfectly appropriate for

— to report to those facilities as directed by the Court.

So I would ask, Judge, that we do have an exceptional

circumstance. And those are not written in stone, Judge. As I

1  said earlier today, I had an exceptional circumstance before

2  Judge Buchwald less than two months ago.  And I'm not saying

3  that you're bound by what any other Article III judge might do,

4  but there my client was the home attendant for a parent who was

5  in end stages of illness, and he was permitted to stay out just

6  to take care of his parent, and so on and so forth.

7         So, Judge, I would think that Ms. Marine has not been

8  in any way difficult in terms of compliance with her

9  conditions.  I think her medical and her health conditions and,

10  of course, the potential for those to get exacerbated if she's

11  placed in an inappropriate facility, all of those, I would say,

12  counsel under the statute for an exceptional circumstance, and

13  I would ask that Ms. Marine be allowed to stay out on current

14  conditions until her sentencing.

15         THE COURT:  All right.  Thank you.

16         I see family members of victims here, and you have a

17  right to speak at every proceeding.  If you want to speak now,

18  you're welcome to, but don't feel at all obligated to do so.

19  But if you'd like to be heard, I'm happy to hear you.

20         A VOICE:  No, your Honor.

21         THE COURT:  All right.  Thank you.

22         So I'm going to remand Ms. Marine.  Pursuant to

23  18 United States Code, Section 3143(a)(2), a defendant who has

24  been found guilty of an offense under the Controlled Substances

25  Act which carries a maximum term of imprisonment of ten years

1    or more and is awaiting the imposition of her sentence shall be

2    detained unless (1) the Court finds that there's a substantial

3    likelihood that a motion for acquittal or a new trial will be

4    granted or an attorney for the government has recommended that

5    no sentence of imprisonment be imposed on the person and the

6    Court finds by clear and convincing evidence that the person is

7    not likely to flee or pose a danger to any other person or the

8    community.

9          Ms. Marine has pled guilty to conspiring to distribute

10   and possess with intent to distribute mixtures and substances

11   containing a detectable amount of cocaine and mixtures and

12   substances containing a detectable amount of fentanyl, in

13   violation of 21 United States Code, Section 846 and

14   841(b)(1)(C).  Because this offense carries a maximum term of

15   imprisonment of 20 years, Ms. Marine's bail application is

16   governed by 3143(a)(2).

17         Given her knowing and voluntary plea, there's of

18   course no substantial likelihood of acquittal, nor is the

19   government recommending that no sentence of imprisonment be

20   imposed.  There is a so-called escape hatch found in 18 United

21   States Code, Section 3145(c).  Bail may be authorized under

22   3145(c) if the defendant meets the conditions of release set

23   forth in 3143(a)(1), which means that the Court must find by

24   clear and convincing evidence that the defendant is not likely

25   to flee or pose a danger to the safety of any other person or

NAUHMarP

the community for least and it's clearly shown that there are

exceptional reasons why the defense detention would not be

appropriate.  A reason is exceptional if it presents a unique

combination of circumstances giving rise to situations that are

out of the ordinary.

Although I am sympathetic to Ms. Marine's health

issues and I'm happy to assist in ensuring that she gets the

medication and care that she needs, I don't find that these

reasons are exceptional pursuant to 3145(c).  In addition, I

don't find by clear and convincing evidence that she's not a

flight risk or a danger to the community.  Pursuant to the plea

agreement, there's a stipulated guidelines range of between 108

and 240 months.  So Ms. Marine is facing the possibility of a

very long sentence, which provides an obvious incentive to

flee.

In addition, with respect to dangerousness, I'm

familiar with the evidence in this case from Mr. Ortega's

trial, and there was significant evidence establishing

Ms. Marine's active role in the conspiracy.  Kaylen Rainey, who

was the courier who delivered the drugs to the victims on the

day of their deaths, testified that Ms. Marine actively

participated in the narcotics conspiracy, stored drugs in her

downtown apartment, provided those drugs to couriers like

Mr. Rainey, and received money from the couriers which she

stored in a safe protected by several firearms.  He also

1  explained that Mr. Ortega worked with other runners who

2  delivered drugs to Ms. Marine's apartment and that her

3  apartment was used to break down and bag the cocaine.  So for

4  all those reasons, remand is appropriate.

5        Are there any other applications at this time?

6        MR. RUSSO:  Judge, I would ask the Court direct —— I

7  don't know how the Court plans to assist Ms. Marine in getting

8  her medication that she requires daily into the facility.  She

9  requires a number of medications.  I would also ask that —— if

10  the Court can direct that she be sent directly to a medically

11  appropriate facility of which, I just want to make my record

12  clear, the MDC is not one of, and I shutter to think of the

13  health ramifications of any time, multi-months, in MDC for this

14  woman.

15        THE COURT:  What I think would be most productive,

16  Mr. Russo, is if you provide to the government the names of the

17  medications that she is presently taking.  I'm going to ask the

18  government to reach out there and talk with MDC about the

19  fastest way to get her the medications that she needs and also

20  ensure that she gets examined promptly.  And to the extent that

21  there is a need for her to go to a medical facility now, I'm

22  happy to make that recommendation, although it will be up to

23  the Bureau of Prisons to do that.  But I am going to ask the

24  government to assist by reaching out to counsel at the MDC to

25  ensure that Ms. Marine gets the medication she needs as soon as

NAUHMarP

1    possible.

2          I have the marshals here.  Thank you for being here.

3          MR. RUSSO:  Yes, Judge, I would thank the Court to

4    make sure that Ms. Marine is at least suggested, if you cannot

5    direct, but suggested to be taken directly to a medical

6    facility and to get medical attention as soon as possible.

7    Again, she has uncontrolled blood pressure as well, so this

8    event may trigger her need for blood pressure medication.

9          THE COURT:  All right.  As I said, I think you should

10   feel free to just put it all in a letter, Mr. Russo, if that's

11   easier rather than just talking to the government, but specify

12   exactly what medications Ms. Marine needs, the blood pressure

13   medication, the cancer medication.  And if there's a particular

14   facility you're asking for transfer to, again, I don't know if

15   the Bureau of Prisons will do it.  I know you'd mentioned one

16   in Kentucky.  If you're asking for that in advance of

17   sentencing, just put that in the letter as well.

18         Mr. Russo, can you get that letter on the docket later

19   today?

20         MR. RUSSO:  Well, the government did receive the

21   letter regarding her cancer medication.

22         THE COURT:  OK.

23         MR. RUSSO:  So they know what it is.

24         THE COURT:  I just want to make sure everything is in

25   one place to make sure that they get all the necessary

NAUHMarP

1    information.  So if there's nothing else that needs to be

2    disclosed or provided in a letter, that's fine, but I just want

3    to make sure that we have it all in one place so we can ensure

4    that Ms. Marine gets the care she needs.

5            MR. RUSSO:  I'll get that over to counsel within the

6    hour.

7            THE COURT:  All right.  Thank you.

8            We're adjourned.

9            (Adjourned)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25